http://www.va.gov/vetapp16/Files4/1630438.txt

Citation Nr: 1630438 
Decision Date: 07/29/16 Archive Date: 08/04/16

DOCKET NO. 15-28 469 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in San Juan, the Commonwealth of Puerto Rico

THE ISSUES

1. Whether new and material evidence has been received to reopen a service connection claim for hypertension.

2. Entitlement to service connection for bilateral hearing loss.

3. Entitlement to service connection for tinnitus.

4. Entitlement to service connection for dyslipidemia.

5. Entitlement to service connection for a cervical spine disability.

6. Entitlement to service connection for bilateral shoulder and arm osteoarthritis.

7. Entitlement to service connection for right elbow osteoarthritis.

8. Entitlement to service connection for right wrist osteoarthritis.

9. Entitlement to service connection for bilateral hip osteoarthritis.

10. Entitlement to service connection for bilateral knee osteoarthritis.

11. Entitlement to service connection for bilateral ankle osteoarthritis.

12. Entitlement to service connection for bilateral foot osteoarthritis.

13. Entitlement to service connection for obstructive sleep apnea.

14. Entitlement to service connection for a psychiatric disability, to include depression, generalized anxiety disorder, and posttraumatic stress disorder (PTSD).

15. Entitlement to service connection for a prostate disability, claimed as benign prostate hyperplasia.

16. Entitlement to a disability rating higher than 20 percent for a lumbar spine disability.

17. Entitlement to a disability rating higher than 10 percent for residuals of left tibia fracture.

18. Entitlement to a compensable disability rating for left leg length difference.

19. Entitlement to a total rating due to individual unemployability (TDIU).

REPRESENTATION

Appellant represented by: The American Legion

ATTORNEY FOR THE BOARD

S. B. Mays, Counsel

INTRODUCTION

The Veteran had active service from July 1956 to July 1958.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a March 2015 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in San Juan, Puerto Rico. 

The issues of entitlement to a compensable rating for left leg length difference; and entitlement to service connection for bilateral hearing loss, tinnitus, degenerative disc disease of the cervical spine, hypertension, bilateral shoulder and arm osteoarthritis, right elbow osteoarthritis, right wrist osteoarthritis, bilateral hip osteoarthritis, bilateral knee osteoarthritis, bilateral ankle osteoarthritis, bilateral foot osteoarthritis, obstructive sleep apnea, a psychiatric disability, and a prostate disability; and entitlement to TDIU are REMANDED to the Agency of Original Jurisdiction.

FINDINGS OF FACT

1. Resolving all doubt in the Veteran's favor, the Veteran has had the functional limitation equivalent of forward flexion of the thoracolumbar spine to 30 degrees or less when considering relevant range of motion findings in addition to evidence of additional functional impairment on repeated use over time or during flare-ups. Unfavorable ankylosis of the thoracolumbar spine and incapacitating episodes having a total duration of at least six weeks during the past 12 months are not shown. 

2. The Veteran's residuals of left tibia fracture approximate malunion of the tibia with moderate knee disability, considering evidence of history of nonunion of the left tibia, left knee arthritis, painful and limited knee motion, and additional functional impairment on repeated use over time or during flare-ups. 

3. Dyslipidemia is a laboratory finding, not a disability due to disease or injury and an underlying disease or injury related to service is not identified.

4. An unappealed January 1992 rating decision denied service connection for hypertension and evidence received since raises a reasonable possibility of substantiating the claim for service connection for hypertension. 

CONCLUSIONS OF LAW

1. The criteria for a 40 percent rating, but not higher, for a lumbar spine disability are more nearly approximated. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.102, 4.3, 4.7, 4.40, 4.45, 4.59, 4.71a, Diagnostic Code 5237 (2015).

2. The criteria for a 20 percent rating, but not higher for residuals of left tibia fracture are more nearly approximated. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.102, 4.3, 4.7, 4.40, 4.45, 4.59, 4.71a, Diagnostic Code 5262 (2015).

3. The criteria to establish service connection for dyslipidemia are not met. 38 U.S.C.A. §§ 1131, 5107 (West 2014); 38 C.F.R. §§ 3.303, 4.1 (2015).

4. The January 1992 rating decision denying service connection for hypertension is final. 38 U.S.C.A. §§ 5108, 7105 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 20.1103 (2015).

5. Evidence received since the January 1992 rating decision is new and material and the claim of entitlement to service connection for hypertension is reopened. 38 U.S.C.A. § 5108 (West 2014); 38 C.F.R. § 3.156(a)(2015).

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

VA's Duties to Notify and Assist

VA has duties to notify and assist a claimant in substantiating claims for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2015).

In this case, the RO provided a notice letter to the Veteran in August 2014, which apprised the Veteran of the type of evidence and information needed to substantiate the claims, and of his and VA's respective responsibilities in obtaining supporting evidence. The RO also advised him as to how disability ratings and effective dates are assigned. The Board finds that the duty to notify has been met.

The Board finds that the duty to assist has also been met and appellate review may proceed without prejudice to the Veteran. Bernard v. Brown, 4 Vet. App. 384 (1993). The record contains the Veteran's service medical records, and post-service treatment records, to include those from a private physician. 

The Veteran underwent February 2015 VA examinations to assess the severity of the service-connected lumbar spine disability and residuals of left tibia fracture. Those examinations involved an in-person interview with the Veteran and a physical assessment. The Board finds those examinations to be adequate to make these decisions because the examiners described the Veteran's disability in sufficient detail so that the Board's decision will be fully informed, and supported all conclusions with analyses that the Board could consider and weigh against contrary opinions. Barr v. Nicholson, 21 Vet. App. 303 (2007). 

The Veteran has not been provided a VA medical examination in conjunction with the service connection claim for dyslipidemia. Upon review of the record, the Board has determined that an examination is not warranted. McClendon v. Nicholson, 20 Vet App. 79 (2006) (VA examination or opinion is necessary where there other criteria are met and there is "insufficient competent medical" evidence for VA to decide the claim). As will be discussed in further detail below, dyslipidemia is only a laboratory finding, and not an actual disability for which VA compensation benefits are payable, therefore a current disability is not shown and a VA examination is not warranted. 

The Board finds that all relevant facts have been properly developed, and all reasonable efforts were made by VA to obtain evidence necessary to substantiate the Veteran's claims decided herein. The Board finds that VA's duty to assist the Veteran has been satisfied. The Veteran has neither alleged nor demonstrated any prejudice with regard to the content or timing of the notice provided. Shinseki v. Sanders, 129 S. Ct. 1696 (2009) (burden of showing error is harmful or prejudicial falls on party attacking agency decision). 

Increased Ratings

Disability ratings are determined by applying the criteria set forth in the VA Schedule for Rating Disabilities. 38 C.F.R. Part 4 (2015). Disability ratings are intended to compensate impairment in earning capacity due to a service-connected disability. 38 U.S.C.A. § 1155 (West 2014). Rating a service-connected disability requires a review of the Veteran's entire medical history regarding that disability. 38 C.F.R. §§ 4.1, 4.2 (2015); Schafrath v. Derwinski, 1 Vet. App. 589 (1991). After careful consideration of the evidence, any reasonable doubt remaining is resolved in favor of the Veteran. 38 C.F.R. § 4.3 (2015). 

If there is a question as to which rating to apply to the Veteran's disability, the higher rating will be assigned if the disability picture more nearly approximates the criteria for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7 (2015).

Where entitlement to compensation has already been established and increase in disability rating is at issue, present level of disability is of primary concern. See Francisco v. Brown, 7 Vet. App. 55 (1994). However, staged ratings are appropriate for an increased rating claim when the factual findings show distinct time periods where the service-connected disability exhibits symptoms that would warrant different ratings. Hart v. Mansfield, 21 Vet. App. 505 (2008).

The Board must analyze the credibility and probative value of the evidence, account for the evidence that it finds persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the veteran. Kahana v. Shinseki, 24 Vet. App. 428 (2011). In doing so, equal weight is not accorded to each piece of evidence in the record as every item of evidence does not have the same probative value. Gilbert v. Derwinski, 1 Vet. App. 49 (1990). 

In general, all disabilities, including those arising from a single disease entity, are rated separately, and all disability ratings are then combined in accordance with 38 C.F.R. § 4.25 (2015). Pyramiding, the rating of the same disability, or the same manifestation of a disability, under different diagnostic codes, is to be avoided when rating a Veteran's service-connected disabilities. 38 C.F.R. § 4.14 (2015).

When rating joint disabilities rated on the basis of limitation of motion, VA must consider granting a higher rating in cases in which functional loss due to pain, weakness, excess fatigability, or incoordination is demonstrated, and those factors are not contemplated in the relevant rating criteria. 38 C.F.R. §§ 4.40, 4.45, 4.59 (2015); DeLuca v. Brown, 8 Vet. App. 202 (1995). Although pain may be a cause or manifestation of functional loss, limitation of motion due to pain is not necessarily rated at the same level as functional loss where motion is impeded.

Pain, in and of itself, that does not result in additional functional loss does not warrant a higher rating. Pain alone does not constitute functional loss, but is just one factor to be considered when rating functional impairment. Mitchell v. Shinseki, 25 Vet. App. 32 (2011). The provisions of 38 C.F.R. § 4.59, which relate to painful motion, are not limited to arthritis and must be considered when raised by the claimant or when reasonably raised by the record. Burton v. Shinseki, 25 Vet. App. 1 (2011).

When all the evidence is assembled, VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the Veteran prevailing in either event, or whether a preponderance of the evidence is against a claim, in which case, the claim is denied. Gilbert v. Derwinski, 1 Vet. App. 49 (1990); 38 U.S.C.A. § 5107 (West 2014); 38 C.F.R. § 3.102 (2015).

Lumbar Spine Disability

The Veteran has been in receipt of a 20 percent disability rating for dorsolumbar fibromyositis with scoliosis which was rated under former Diagnostic Code 5295-5291 since July 20, 1968. 38 C.F.R. § 4.71a (2002). Because the 20 percent rating has been in effect for more than 20 years, it is a protected rating, and cannot be reduced, except upon a showing of fraud on the part of the Veteran, or other circumstances not present in this case. 38 C.F.R. § 3.951(b) (2015). The Veteran now seeks a disability rating higher than 20 percent. 

Diagnostic Code 5295 refers to the earlier criteria (pre-2003) pertaining to lumbosacral strain. 38 C.F.R. § 4.71a (2002). Diagnostic Code 5291 refers to the earlier criteria (pre-2003) pertaining to limitation of motion of the dorsal spine. 38 C.F.R. § 4.71a (2002). Hyphenated diagnostic codes are used when a rating under one diagnostic code requires use of an additional diagnostic code to identify the basis for the evaluation assigned; the additional code is shown after the hyphen. 38 C.F.R. § 4.27 (2015). 

However, effective September 26, 2003, all diagnostic codes pertaining to the spine were renumbered and it was provided that the rating of all spine disabilities was to be under a new General Rating Formula for Diseases and Injuries of the Spine. 38 C.F.R. § 4.71a (2015). 

Diagnostic Codes 5291 and 5295 are no longer part of the current rating schedule, and separate ratings are no longer available for the dorsal and thoracic spine and the lumbar spine. Rather, the General Rating Formula for Diseases and Injuries of the Spine currently in place assigns ratings for the thoracolumbar spine, which includes the dorsal spine and the lumbar spine. Because the Veteran filed his current claim after September 2003, only the new rating criteria are applicable to the current claim for increase.

Disabilities of the spine are rated under the General Formula for Diseases and Injuries of the Spine. 38 C.F.R. § 4.71a (2015). Intervertebral disc disease can alternatively be rated under the Formula for Rating Intervertebral Disc Syndrome Based on Incapacitating Episodes (IVDS Formula). 38 C.F.R. § 4.71a (2015). 

Under the General Rating Formula, a 10 percent rating is warranted for forward flexion of the thoracolumbar spine greater than 60 degrees but not greater than 85 degrees; or, combined range of motion of the thoracolumbar spine greater than 120 degrees but not greater than 235 degrees; or, muscle spasm, guarding, or localized tenderness not resulting in abnormal gait or abnormal spinal contour; or, vertebral body fracture with loss of 50 percent or more of the height. A 20 percent rating is warranted for forward flexion of the thoracolumbar spine greater than 30 degrees but not greater than 60 degrees; or, the combined range of motion of the thoracolumbar spine not greater than 120 degrees; or, muscle spasm or guarding severe enough to result in an abnormal gait or abnormal spinal contour such as scoliosis, reversed lordosis, or abnormal kyphosis. A 40 percent rating is warranted for forward flexion of the thoracolumbar spine 30 degrees or less, or favorable ankylosis of the entire thoracolumbar spine. A 50 percent rating is warranted for unfavorable ankylosis of the entire thoracolumbar spine. 38 C.F.R. § 4.71a, General Rating Formula for Diseases and Injuries of the Spine (2015). 

Alternatively, under the IVDS Formula, incapacitating episodes having a total duration of at least six weeks during the past 12 months warrants a 60 percent rating. For incapacitating episodes having a total duration of at least four weeks but less than six weeks during the past 12 months, a 40 percent rating is warranted. With incapacitating episodes having a total duration of at least two weeks but less than four weeks during the past 12 months, a 20 percent rating is warranted. With incapacitating episodes having a total duration of at least one week but less than two weeks during the past 12 months, a 10 percent rating is warranted. 38 C.F.R. § 4.71a, Diagnostic Code 5243 (2015). 

An incapacitating episode is a period of acute signs and symptoms due to intervertebral disc syndrome which requires bed rest prescribed by a physician and treatment by a physician. 38 C.F.R. § 4.71a, Diagnostic Code 5243 (2015). Any associated objective neurologic abnormalities are evaluated separately under an appropriate diagnostic code. 38 C.F.R. § 4.71a, Diagnostic Code 5243, Note (1) (2015).

Rating factors for a disability of the musculoskeletal system include functional loss due to pain supported by adequate pathology and evidenced by visible behavior of the claimant undertaking the motion, weakness, excess fatigability, incoordination, pain on movement, swelling, or atrophy. 38 C.F.R. §§ 4.40, 4.45 (2015); DeLuca v. Brown, 8 Vet. App. 202 (1995). 

In rating musculoskeletal disabilities, VA must determine whether pain could significantly limit functional ability during flare-ups, or when the joints are used repeatedly over a period of time. DeLuca v. Brown, 8 Vet. App. 202 (1995). 

VA received the Veteran's increased rating claim on appeal here in July 2014. 

At a February 2015 VA examination, the Veteran reported constant low back pain worse when he stands or walks. He stated that he has a low tolerance to standing and experienced low back pain after walking for five minutes. He had difficulty and pain if he had to bend over to dress himself (putting on socks, underwear and pants). He reported functional impairment or loss in terms of difficulty standing, walking, getting dressed, and standing in the shower. Range of motion in the lumbar spine was from 10 to 60 degrees. Bilateral lateral flexion and bilateral lateral rotation were to 20 degrees. Pain was noted during range of motion testing, but did not cause or result in functional loss. Range of motion itself did not contribute to functional loss. There was pain on weightbearing. There was objective evidence of localized tenderness to palpation of the paravertebral muscles. The Veteran was able to do repetitive use testing and it did not result in additional functional loss or range of motion. The examiner noted that the examination was medically consistent with the Veteran's statements describing functional loss after repetitive use over time. Pain significantly limited functional ability over repeated use of the lumbar spine, but it could not be described in terms of range of motion. The examiner noted that the examination was medically consistent with the Veteran's statements describing functional loss during flare-ups. Pain significantly limited functional ability during flare-ups. There was no evidence of back guarding or muscle spasms on examination. Muscle strength testing in the lower extremities was normal. Muscle atrophy was not present. Reflexes in both ankles were absent. Reflexes in the knees were hypoactive. Sensory testing in the lower extremities was normal. Straight leg raising test was normal. The Veteran did not have any radicular pain or any other signs or symptoms of radiculopathy in the lower extremities. Ankylosis in the spine was not present. IVDS was not present. The diagnosis was lumbar strain. It was also noted that the Veteran regularly used a brace and constantly used a cane. The examiner stated that the Veteran was able to work in a sedentary or semi-sedentary job and should not lift 15 pounds or more, or bend or twist repetitively at the trunk during the performance of job tasks.

As indicated, the Veteran is in receipt of a 20 percent rating for his lumbar spine disability. The criteria under the General Rating Formula for the next higher rating of 40 percent is evidence of forward flexion of the thoracolumbar spine 30 degrees or less, or favorable ankylosis of the entire thoracolumbar spine. 

On February 2015 VA examination, forward flexion of the Veteran's thoracolumbar spine was to 60 degrees. Therefore a higher rating under Diagnostic Code 5237 is not warranted based on limitation of flexion. Nonetheless, the Board recognizes the objective evidence of additional functional impairment upon repeated use over time or during a flare-up. Although the 2015 VA examiner could not objectify the amount of additional loss, the examiner indicated that the examination was medically consistent with the Veteran's statements describing functional loss which included difficulty walking, standing, dressing, and showering. The Veteran is competent to report these observable symptoms and limitations. Layno v. Brown, 6 Vet. App. 465 (1994). In addition to the Veteran's competent statements regarding functional impairment, the examiner specifically stated that the Veteran's pain "significantly" limited his functional ability over repeated use of the lumbar spine or during flare-ups and advised the Veteran against lifting 15 pounds or more, or bending or twisting repetitively at the trunk. 

Based on that evidence and with resolution of all doubt in favor of the Veteran, the Board finds that he has the functional equivalent of forward flexion limited to 30 degrees or less in the thoracolumbar spine, when also considering evidence of additional functional impairment on repeated use over time or during flare-ups. Accordingly, the criteria for a 40 percent rating under Diagnostic Code 5237 have been approximated since the beginning of the claim. It is noted that the 40 percent rating assigned herein represents the maximum rating for limitation of motion. Therefore, further analysis of functionally limited factors is not required. DeLuca v. Brown, 8 Vet. App. 202 (1995); Johnston v. Brown, 10 Vet. App. 80 (1997). 

The evidence does not show ankylosis. Therefore a rating greater than 40 percent is not warranted.

Accordingly, the Board finds that entitlement to a 40 percent rating, but not higher, for a lumbar spine disability is warranted. The preponderance of the evidence is against the assignment of any higher rating. Gilbert v. Derwinski, 1 Vet. App. 49 (1990); 38 U.S.C.A. § 5107 (West 2014); 38 C.F.R. § 3.102 (2015).

Residuals of Left Tibia Fracture 

The Veteran seeks a rating higher than 10 percent for residuals of left tibia fracture.

Knee disabilities are rated under Diagnostic Code 5256 for ankylosis, Diagnostic Code 5257 for other impairment, including recurrent subluxation or lateral instability, Diagnostic Code 5258 for dislocated semilunar cartilage, Diagnostic Code 5259 for symptomatic removal of semilunar cartilage, Diagnostic Code 5260 for limitation of flexion, Diagnostic Code 5261 for limitation of extension, Diagnostic Code 5262 for impairment of the tibia and fibula, and Diagnostic Code 5263 for genu recurvatum. 38 C.F.R. § 4.71a, Diagnostic Codes 5256-5263 (2015).

Under Diagnostic Code 5256, a 30 percent rating is assigned for ankylosis of a knee at a favorable angle in full extension, or in slight flexion between 0 degrees and 10 degrees. A 40 percent rating is assigned for ankylosis of a knee in flexion between 10 degrees and 20 degrees. A 50 percent rating is assigned for ankylosis of a knee between 20 degrees and 45 degrees. A 60 percent rating is assigned for extremely unfavorable ankylosis of a knee in flexion at an angle of 45 degrees or more. 38 C.F.R. § 4.71a, Diagnostic Code 5256 (2015).

Under Diagnostic Code 5257, for other knee impairment including recurrent subluxation or lateral instability, warrants a 10 percent rating if resulting in slight disability, a 20 percent rating for moderate disability, and a 30 percent rating if it is severe. 38 C.F.R. § 4.71a, Diagnostic Code 5257 (2015).

Under Diagnostic Code 5258, a 20 percent rating is assigned for dislocated semilunar cartilage. 38 C.F.R. § 4.71a, Diagnostic Code 5258 (2015).

Under Diagnostic Code 5259, removal of semilunar cartilage that is symptomatic warrants a 10 percent rating. 38 C.F.R. § 4.71a, Diagnostic Code 5259 (2015).

Flexion of the leg limited to 60 degrees warrants a 0 percent rating, flexion limited to 45 degrees warrants a 10 percent rating, flexion limited to 30 degrees warrants a 20 percent rating, and flexion limited to 15 degrees warrants a 30 percent rating. 38 C.F.R. § 4.71a, Diagnostic Code 5260 (2015). 

Extension limited to 5 degrees warrants a 0 percent rating. Extension limited to 10 degrees warrants a 10 percent rating. Extension limited to 15 degrees warrants a 20 percent rating. Extension limited to 20 degrees warrants a 30 percent rating. Extension limited to 30 degrees warrants a 40 percent rating. Extension limited to 45 degrees warrants a 50 percent rating. 38 C.F.R. § 4.71a, Diagnostic Code 5261 (2015).

Normal or full range of motion of a knee is from 0 degrees of extension to 140 degrees of flexion. 38 C.F.R. § 4.71, Plate II (2015). 

Under Diagnostic Code 5262, a 10 percent rating is warranted for malunion of the tibia and fibula with slight knee or ankle disability. A 20 percent rating is warranted when there is malunion of the tibia and fibula with moderate knee or ankle disability. A 30 percent rating is warranted for malunion of the tibia and fibula with marked knee or ankle disability. A maximum 40 percent rating is warranted for nonunion of the tibia and fibula with loose motion, requiring brace. 38 C.F.R. § 4.71a, Diagnostic Code 5262 (2015). 

A 10 percent rating is assigned for acquired, traumatic genu recurvatum, with weakness and insecurity in weight-bearing objectively demonstrated. 38 C.F.R. § 4.71a, Diagnostic Code 5263 (2015). 

Separate ratings may be assigned for knee disability under Diagnostic Codes 5257 and 5003 where there is x-ray evidence of arthritis in addition to recurrent subluxation or lateral instability. VAOPGCPREC 23-97 (1997), 62 Fed. Reg. 63,604 (1997); VAOPGCREC 9-98 (1998), 63 Fed. Reg. 56704 (1998).

Separate ratings may be assigned where a service-connected knee disability includes both a compensable limitation of flexion under Diagnostic Code 5260 and a compensable limitation of extension under Diagnostic Code 5261, provided that the degree of disability is compensable under each set of criteria. VAOPGCPREC 09-04 (2004); 69 Fed. Reg. 59990 (2004).

The Veteran in this case fractured his left tibia during service, and because of a non-union fracture, his cast needed to be extended. He subsequently developed a deformity and left leg length discrepancy. 

At a February 2015 VA examination, the Veteran stated that if he stood or walked for more than five minutes, he had a left leg flare-up of pain and must sit for about a half an hour before being able to continue. He reported functional impairment or loss in terms of difficulty standing, walking, getting dressed, and standing in shower. On examination, range of left knee motion was from 0 degrees to 130 degrees of flexion. Pain was noted on range of motion testing but it did not result in functional loss. There was objective evidence of localized tenderness or pain on palpation of the medial upper third of the tibia. Crepitus of the left knee was not demonstrated. The Veteran was able to perform repetitive-use testing and the examiner did not observe additional functional loss or range of motion. However, it was noted that pain significantly limited the Veteran's functional ability over repeated use of the left knee. An estimation of additional functional limitation could not be expressed because it would be mere speculation. The examiner noted that the examination was medically consistent with the Veteran's statements describing functional loss during a flare-up. Pain also significantly limited functional ability during flare-ups. Muscle strength testing in the left knee was normal. Muscle atrophy was not present. Ankylosis of the left knee was not present. There was no history of recurrent subluxation or lateral instability. Joint stability testing was normal in the left knee. Recurrent patellar dislocation, shin splints, stress fractures, chronic exertional compartment syndrome or fibular impairment was not demonstrated. He had not had any meniscal tears in the left knee. He reported using a cane on a constant basis on account of his left leg and back conditions. Arthritis in the left knee was documented by x-rays. The examiner stated that the Veteran should work in a sedentary position avoiding climbing stairs and squatting as job duties. 

As described above, the Veteran has a deformity in the upper third of the left tibia secondary to the tibia fracture in service, and associated left knee arthritis with painful and limited motion. His range of left knee motion exhibited during the 2015 VA examination does not warrant a higher rating under Diagnostic Code 5260 or 5261. However, he has competently reported functional impairment with repeated use over time or during a flare-up and the examiner noted that the examination was medically consistent with the Veteran's statements. The Veteran is competent to report the having flare-ups of left leg pain after standing or walking for more than five minutes, as well as difficulty standing, walking, getting dressed, and standing in the shower. 

Based on that evidence and with resolution of all doubt in favor of the Veteran, the Board finds that the Veteran's residuals of left tibia fracture are most appropriately characterized as malunion of the tibia with moderate knee disability. Accordingly, the criteria for a 20 percent rating are approximated under DC 5262 since the beginning of the claim.

However, the Board finds that more than moderate disability of the left knee or ankle is not shown. The evidence does not show that the Veteran would separately meet any criteria for knee or ankle rating criteria that would warrant a finding of a higher level of disability.

Accordingly, the Board finds that a rating of 20 percent, but not higher, is warranted for residuals of a left tibia fracture. However, the preponderance of the evidence is against the assignment of any higher rating. Gilbert v. Derwinski, 1 Vet. App. 49 (1990); 38 U.S.C.A. § 5107 (West 2014); 38 C.F.R. § 3.102 (2015).

Service Connection for Dyslipidemia

The Veteran contends that he has dyslipidemia that is related to service. 

Service connection may be granted for disability resulting from disease or injury incurred in or aggravated by active service. 38 U.S.C.A. § 1131 (West 2014); 38 C.F.R. § 3.303(a) (2015). In addition, service connection may be granted for any disease diagnosed after discharge, when all of the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d) (20150. 

In order to establish service connection for a claimed disorder on a direct basis, there must be: (1) medical evidence of a current disability; (2) medical, or in certain circumstances, lay evidence of the in-service incurrence or aggravation of a disease or injury; and (3) medical evidence of a nexus between the claimed in-service disease or injury and the current disability. Hickson v. West, 12 Vet. App. 247 (1999).

Congress has specifically limited entitlement for service-connected disease or injury to cases where the incident has resulted in actual disability. Brammer v. Derwinski, 3 Vet. App. 223 (1992); Rabideau v. Derwinski, 2 Vet. App. 141 (1992); Gilpin v. Brown, 155 F.3d 1353 (Fed. Cir. 1998). A current disability means a disability shown by competent and credible evidence to exist. Chelte v. Brown, 10 Vet. App. 268 (1997).

In making all determinations, the Board must fully consider the lay assertions of record. A layperson is competent to report on the onset and continuity of his current symptomatology. Layno v. Brown, 6 Vet. App. 465 (1994) (a Veteran is competent to report on that of which he or she has personal knowledge). 

On review of all evidence, the Board finds that the criteria to establish service connection for dyslipidemia are not met. 

Dr. Mora Quesada's July 2014 statement indicates that the Veteran has dyslipidemia. The Veteran's diagnosis of dyslipidemia represents only a laboratory findings, and not an actual disability for which VA compensation benefits are payable. 61 Fed. Reg. 20440, 20445 (May 7, 1996). There is no competent evidence of record showing any diagnosed disability for which service connection can be granted.

The Board recognizes that the representative, in the 2016 written argument, suggests that there may be outstanding VA medical evidence. Nonetheless, no additional records showing a laboratory finding of dyslipidemia would help to substantiate the claim. As dyslipidemia of itself is not a disability for VA compensation benefits purposes, it is not a service-connectable disability entity. Therefore, the Veteran has not presented a valid claim of service connection. Brammer v. Derwinski, 3 Vet. App. 223 (1992). Consequently, the claim of service connection for dyslipidemia must be denied.

New and Material Evidence

Rating decisions are final and binding based on evidence on file at the time the claimant is notified of the decision and may not be revised on the same factual basis except by a duly constituted appellate authority. 38 C.F.R. § 3.104(a) (2015). The claimant has one year from notification of a RO decision to initiate an appeal by filing a notice of disagreement with the decision, and the decision becomes final if an appeal is not perfected within the allowed time period. 38 U.S.C.A. §7105 (West 2014); 38 C.F.R. §§ 3.160, 20.201, 20.302 (2015).

To reopen a claim, new and material evidence must be presented or secured. 38 U.S.C.A. § 5108 (West 2014). The Board does not have jurisdiction to consider the previously adjudicated claim unless new and material evidence is presented, and before the Board may reopen the claim, it must so find. Jackson v. Principi, 265 F.3d 1366 (Fed. Cir. 2001). The Board is neither required nor permitted to analyze the merits of a previously-disallowed claim if new and material evidence is not presented or secured. Butler v. Brown, 9 Vet. App. 167 (1996). When determining whether a claim should be reopened, the credibility of the new evidence is presumed to determine whether it is material. Justus v. Principi, 3 Vet. App. 510 (1992). 

New evidence is defined as existing evidence not previously submitted to agency decisionmakers. Material evidence means existing evidence that, by itself or when considered with previous evidence of record, relates to an unestablished fact necessary to substantiate the claim. New and material evidence can be neither cumulative nor redundant of the evidence of record at the time of the last prior final denial of the claim sought to be reopened, and must raise a reasonable possibility of substantiating the claim. 38 C.F.R. § 3.156(a) (2015). The threshold for determining whether new and material evidence raises a reasonable possibility of substantiating a claim is low. Shade v. Shinseki, 24 Vet. App. 110 (2010).

In this case, the record shows that the Veteran originally filed a VA compensation claim for hypertension in August 1991, and the RO, in a January 1992 rating decision, denied that claim. Although there was evidence of current hypertension, the RO determined that there was no evidence of nexus between the Veteran's hypertension and active service. The Veteran did not appeal the January 1992 rating decision and it therefore became final. 

In 2014, the Veteran essentially sought to reopen the previously denied claim for service connection for hypertension.

On review, the Board finds that the new and material evidence has been received since the adjudication of the last final rating decision. Notably, Dr. Mora Quesada, in a July 2014 opinion, suggested a link between the Veteran's hypertension and service. That opinion is considered new as it was not previously submitted to agency decisionmakers. It is also considered material to the claim in that it relates to the unestablished element of a nexus and raises a reasonable possibility of substantiating the claim. The credibility of the newly submitted evidence is presumed for purposes of reopening only. Justus v. Principi, 3 Vet. App. 510 (1992). Therefore, the Board finds that the criteria to reopen the hypertension claim are met and the petition to reopen is therefore granted. However, further development is needed prior to analyzing the merits of the hypertension claim.

ORDER

Entitlement to a 40 percent rating, but not higher, for lumbar spine disability is granted. 

Entitlement to a 20 percent rating, but not higher, for residuals of left tibia fracture is granted. 

Entitlement to service connection for dyslipidemia is denied.

New and material has been received and the claim to reopen a previously denied claim for service connection for hypertension is reopened. To this extent only, the appeal is granted.

REMAND

n July 2016 written argument, the Veteran's representative noted that the Veteran's VA treatment records current of record are now approximately two years old and noted the presence of new and relevant VA treatment records as the Veteran has been going regularly for medical care. On remand, the RO must ensure that the Veteran's current VA medical records are associated with the record.

Moreover, a request for Social Security Administration (SSA) records should be made. Although it appears that the Veteran is receiving SSA benefits based on age alone, the question of whether he is also receiving SSA benefits based on disability is also considered. As the Board is remanding the appeal for additional records, the Board finds that as request for SSA disability records should be made. 

For the claim for service connection for bilateral shoulder and arm, right elbow, right wrist, bilateral hip, bilateral knee, bilateral ankle, and bilateral foot disabilities, a July 2014 statement authored by Dr. Mora Quesada diagnosed bilateral shoulder and arm, right elbow, right wrist, hip, knee, ankle, and feet disabilities and opined that they were more probable than not secondary to service performance. 

In addition, the Veteran asserts in the July 2016 written argument that he has developed bilateral hip, knee, ankle, and foot conditions due to the altered gait that is caused by the service-connected lumbar spine disability, left tibia fracture residuals, and leg length discrepancy. 

On remand, a VA examination is necessary to help ascertain the likely etiology of any currently diagnosed current bilateral shoulder and arm, right elbow, right wrist, bilateral hip, bilateral knee, bilateral ankle, and bilateral foot disabilities. 

In Dr. Mora Quesada's July 2014 opinion, he indicated that the Veteran's cardiovascular disorder, which presumably includes hypertension, is more probable than not secondary to service performance. The Veteran asserts that he has hypertension secondary to the effects of NSAIDs that are prescribed for his-service connected disabilities. A VA examination is needed to ascertain the likely etiology of any current hypertension. 
 
The July 2014 statement authored by Dr. Mora Quesada, diagnosed the Veteran with sleep apnea and prostate disability and essentially opined that those disabilities were more probable than not secondary to service performance. The Veteran has not been provided a VA examination to ascertain whether he has sleep apnea or a prostate disability that is related to service. On remand, a VA examination and opinion should be scheduled.

Examinations are also needed to clarify the etiology of the Veteran's hearing loss and tinnitus. A February 2015 VA examiner determined that the hearing loss was less likely related to service, and more likely related to the normal aging process. In July 2016 written argument, the Veteran's representative challenged the adequacy of the opinion, asserting that the examiner did not explain why the Veteran has twice the amount of hearing loss at his age and cited to a NIOSH study noting that there is no appreciable presbycusis after age 60. On remand, that argument must be addressed by a medical examiner.

The Veteran also asserts that he has tinnitus secondary to the effects of NSAIDs that are prescribed for service connected disabilities. On remand, that argument must be addressed by the medical examiner.

The record contains a current diagnosis of a cervical spine disability, inservice evidence of treatment for pain between shoulders, a favorable etiology opinion by July 2014 Dr. Mora Quesada, and an unfavorable opinion by the February 2015 examiner. On remand, if any newly received medical evidence suggests that the Veteran's cervical spine disability is related to his service, the Veteran's claims file should be forwarded to the 2015 VA examiner for an addendum.

The record to date contains no VA outpatient records showing a current psychiatric diagnosis. However, in a July 2014 medical report, Dr. Mora Quesada diagnosed the Veteran with major depressive disorder, generalized anxiety, and PTSD, and determined that those disabilities are more probable than not related to service. To help assist in determining the current nature and etiology of any current psychiatric disorder, VA provided the Veteran with a mental health examination in February 2015. The examiner was unable to diagnose any psychiatric disorders other than an alcohol abuse disorder and opined that the Veteran's claimed psychiatric disorder is less likely as not related to service. If any newly received medical evidence suggests that the Veteran has a current psychiatric disorder that may be related to service, the claims file should be forwarded to the 2015 examiner for an addendum.

The issue of entitlement to a TDIU is intertwined with the increased rating claims and service connection claims being remanded herein because a decision on the latter claims may have an impact on the former claim. Consequently, the claim of entitlement to TDIU must be remanded for contemporaneous adjudication.

Accordingly, the case is REMANDED for the following action:

1. Obtain and associate with the claims file all outstanding VA treatment records.

2. Contact the Veteran and ask him to provide any information regarding any outstanding private treatment records pertinent to the claims on appeal. Then provide him VA Forms 21-4142, Authorization and Consent to Release Information to the VA, for any identified outstanding and relevant private treatment records. Advise the Veteran that he may submit those records if he so chooses. Obtain any identified and authorized private treatment records. If no records are available or do not exist or the search for them yields negative results and it is determined that further attempts to obtain these records would be futile, then that should be clearly documented in the claims file and the Veteran appropriately notified.

3. Obtain the Veteran's complete service personnel records. All action in this regard must be documented in the claims file.

4. Contact the Veteran and inquire whether he is currently receiving SSA disability benefits. If so, obtain from the SSA a copy of any decision regarding the Veteran's claim for disability benefits, and copies of all medical records underlying those determinations.

5. Provide the Veteran with a VA examination to determine the current nature and severity of a service-connected left leg length difference. The examiner must review the claims file and should note that review in the report. A complete rationale should be provided for any opinions expressed and conclusions reached. After examining the Veteran and reviewing the claims file, the examiner should describe in detail the signs and symptoms relevant to the left leg length difference. The examiner should measure the left leg length difference and provide the measurements in inches or centimeters. The examiner should identify any functional impairment associated with the Veteran's service-connected left leg length difference, including what kind of employment limitations that might result, if any. 

6. Schedule the Veteran for a VA audiology examination. The examiner must review the claim file and should note that review in the report. The examiner should clarify whether the Veteran's hearing loss had its onset during active service or are otherwise related to any incident of service. In so doing, the examiner should address and reconcile: (i). A July 2014 Medical Report authored by Dr. Mora Quesada noting the Veteran's complaint of hearing loss secondary to high noises during service, and opining that the Veteran presents with a neurological disorder which is more probable than not secondary to his military service performance; and (ii). The Veteran's challenge to the 2015 VA etiology opinion, asserting that there is no appreciable presbycusis after age 60, with citation to a NIOSH study, 29 CFR 1910.95, Appendix F, and LaSalle University article on Decibel Levels. See July 2016 Informal Hearing Presentation. For purposes of this opinion request, the examiner should assume the competency of the Veteran's lay report of having current tinnitus as that condition is capable of lay observation. The examiner is asked to provide an opinion as to whether the Veteran's tinnitus had its onset in service or is otherwise related to service or any incident of service. Also, the examiner should provide an opinion as to whether the Veteran's tinnitus is proximately due to, or aggravated by a service connected disability. In so doing, the examiner comment on the Veteran's argument that tinnitus is associated with the use of NSAIDs, and thus is etiologically related to his service-connected lumbar spine and left leg disabilities, as he is prescribed that medication for relief. A complete rationale should be provided for any opinions expressed and conclusions reached.

7. Schedule the Veteran for a VA examination to determine the etiology of hypertension. The examiner must review the claims file and should note that review in the report. After examining the Veteran and reviewing his claims file, the examiner is asked to provide an opinion as to whether the Veteran's hypertension had its onset during active service or within the first post-service year, or is otherwise related to any incident of service. In doing so, attention is called to (i) the service medical records showing no symptoms, treatment, or diagnoses referable to hypertension and as blood pressure of 120/68 on separation, (ii) a December 1991 VA examination report noting the Veteran's report of taking antihypertensive medication, (iii) Dr. Mora Quesada's July 2014 opinion that the Veteran's cardiovascular disorder is more probable than not secondary to his military service performance, and (iv) a July 2016 Informal Hearing Presentation argument that NSAIDs increase blood pressure with citation to an internet Medscape article. A complete rationale should be provided for any opinions expressed and conclusions reached.

8. Schedule the Veteran for a VA examination to determine the current nature and etiology of any currently diagnosed bilateral shoulder/arm, right elbow, right wrist, bilateral hip, bilateral knee, bilateral ankle, and bilateral foot disabilities. The examiner must review the claims file and should note that review in the report. Any necessary tests or studies must be conducted and all clinical findings should be reported in detail. A complete rationale should be provided for any opinions expressed and conclusions reached. After reviewing the claims file and examining the Veteran, the examiner is asked to:

(a) Diagnose any bilateral shoulder and arm, right elbow, right wrist, bilateral hip, bilateral knee, bilateral ankle, and bilateral foot disabilities currently shown, to include arthritis.

(b) For each bilateral shoulder and arm, right elbow, right wrist, bilateral hip, bilateral knee, bilateral ankle, and bilateral foot disability currently shown, determine whether it had its onset during service or is otherwise related to service or any incident of service. In so doing, consider all evidence of record, and specifically comment on the July 2014 statement authored by Dr. Mora Quesada in which he essentially stated that the disorders the Veteran's shoulder and arm, right elbow, right wrist, hips, knees, ankle, feet are more probable than not secondary to his military service performance. 

(c). For each currently shown bilateral hip, knee, ankle, and foot disability, provide an opinion as to whether it is proximately due to, or aggravated by, an altered gait caused by a service-connected lumbar spine disability, left tibia fracture residuals, and left leg length discrepancy. In so doing, please comment on the July 2016 informal hearing presentation argument regarding altered gait, with cited medical treatise information. 

9. Schedule the Veteran for a VA examination to determine the current nature and etiology of any diagnosed obstructive sleep apnea and prostate disability. The examiner must review the claims file and should note that review in the report. Any necessary tests must be conducted and all clinical findings should be reported in detail. A complete rationale should be provided for any opinions expressed. After reviewing the claims file and examining the Veteran, the examiner is asked to:

(a) State whether any obstructive sleep apnea or prostate disability is currently found. Consider a July 2014 report by Dr. Quesada diagnosing prostate disability and obstructive sleep apnea, but indicating that a sleep study is advised only to "rule-out" sleep apnea.

(b) For any currently shown obstructive sleep apnea and prostate disability, determine whether it had its onset during service or is otherwise related to service. In so doing, consider all evidence of record, and specifically comment on the July 2014 statement authored by Dr. Mora Quesada essentially opining that those disabilities are more probable than not secondary to his military service performance. 

10. If newly received evidence suggests that any current cervical spine disability or psychiatric disability may be associated with service, schedule the Veteran for a VA medical examination with consideration of that new evidence.

11. Then, readjudicate the claims. If any decision is adverse to the Veteran, issue a supplemental statement of the case and allow the applicable time for response. Then, return the case to the Board.

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999). This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board or the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. 38 U.S.C.A. §§ 5109B, 7112 (West 2014).

______________________________________________
Harvey P. Roberts
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs